| | AUSA: | Craig A. Weier | Telephone: | (313) 226-9678 |
|---|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | David S. Jacobs | Telephone: | (313) 919-1509 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
Anthony Roland Lister Leeds

Case No.   Case: 2:22–mj–30501
Assigned To : Unassigned
Assign. Date : 11/16/2022
SEALED MATTER (LH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 25-30, 2020__ in the county of __Oakland__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

☐ Continued on the attached sheet.

_Complainant's signature_

David S. Jacobs, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: November 16, 2022

City and state: Detroit, MI

_Judge's signature_

Hon. Anthony P. Patti, U.S. Magistrate Judge
_Printed name and title_

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A CRIMINAL COMPLAINT

I, David S. Jacobs, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the FBI Detroit-Oakland County Resident Agency. I have been employed as an FBI Special Agent since July 2017. As such, I primarily investigate white collar crimes, and am a member of the Detroit Metro Identity Theft and Financial Crimes Task Force. The task force consists of FBI Special Agents and federally deputized law enforcement officers from state and local law enforcement agencies in Metro Detroit. The task force is responsible for investigating complex financial crimes including but not limited to bank fraud, wire fraud, money laundering and large-scale identity theft and access device fraud. I have conducted and been trained in the investigation of violations of federal law including, but not limited to, bank fraud, wire fraud, money laundering, identity theft, and access device fraud.

2. This affidavit is based upon evidence I have gained from information provided by other FBI personnel, the victim, and others who have personal

and/or professional knowledge or the events and circumstances described herein.

3. The information set forth in this affidavit is meant to establish probable cause to show that Anthony Roland Lister Leeds (LEEDS) has committed acts in violation of 18 U.S.C. § 1343 (Wire Fraud) and the information set forth is for the limited purpose of establishing probable cause; this affidavit, therefore, may not include all the information collected during this investigation. As will be demonstrated below, LEEDS defrauded a partner to a real estate acquisition, Scott Salzeider (SALZEIDER) into providing LEEDS with $250,000 more in earnest money deposits than the seller required, then used that money for his own purposes, and the sale was never consumated. This fraud was accomplished through LEEDS creating false documents and supplying them to SALZEIDER and using the interstate transmission of signals in furtherance of the scheme.

## PROBABLE CAUSE

4. Scott Salzeider (SALZEIDER) is the owner of a general contractor and construction management firm located in Bloomfield Hills, Michigan, known as Salzeider Inc. In approximately June of 2020, SALZEIDER and LEEDS entered into an agreement to purchase commercial real estate

property, (the Property) in Carol Stream, Illinois, which was owned by Easy Street Spartan 8411, LLC (ESS).

5. According to information provided by SALZEIDER, his attorney, and information located on the Michigan Department of Licensing and Regulatory Affairs website, prior to July 21, 2020, Anthony LEEDS was the registered agent on file of an entity known as OM Capital Fund II, LLC, (OM). As of present time, LEEDS' spouse, Andrea N. Leeds is the listed resident agent of OM. OM's reported address is on N. Old Woodward Ave. Birmingham, Michigan. As of approximately October 12, 2022, the building that is the listed address for OM is under construction and appeared to be unoccupied by tenants.

6. SALZEIDER and LEEDS had an understanding that all costs of the acquisition of the Property would be split 50/50 by SALZEIDER and LEEDS. A Memorandum of Understanding, (MOU) was signed and executed by LEEDS and SALZEIDER on July 23, 2020, detailing provisions to acquire the Property. SALZEIDER provided a copy of the signed MOU to the FBI.

7. A Purchase and Sale Agreement, (PSA) was executed between ESS and LEEDS dated June 26, 2020. The PSA was signed by AB, who was a

representative of ESS, as well as LEEDS. SALZEIDER did not sign the PSA. Relevant terms of the PSA included the sale price of $2,100,000.00 for the Property and an earnest money deposit, (EMD), in the amount of $250,000.00 that was due upon execution of the PSA and was immediately non-refundable. The aforementioned PSA was provided to the FBI.

8. Despite LEEDS signing the PSA that required an EMD in the amount of $250,000.00, LEEDS presented an altered PSA document to SALZEIDER that listed a required EMD in the amount of $800,000.00. SALZEIDER's attorney confirmed to Affiant that LEEDS provided the altered PSA to SALZEIDER via email, thus using the internet to transmit the document.

9. A copy of the altered PSA was provided to the FBI. On June 25, 2020, SALZEIDER wired what he believed was half of the required, yet altered, EMD ($400,000.00) to LEEDS' Lake Trust Credit Union savings account ending in **2600. Wire detail information provided by Lake Trust Credit Union confirmed LEEDS' savings account ending in **2600 received a $400,000.00 incoming wire from the SALZEIDER INC. account that was held with PNC BANK N.A. on June 25, 2020.

10. A June 2020 account statement for LEEDS' Lake Trust Credit Union savings account ending **2600 and his basic commercial checking account ending **9190 showed the following:

    a. $400,000.00 wire entered **2600 on June 25, 2020

    b. $1,000.00 withdrawn from **2600 and transferred to **9190 on June 25, 2020

    c. $110,695.99 withdrawn from **2600 on June 25, 2020

    d. $287,349.00 withdrawn from **2600 on June 25, 2020

    e. $284,349.00 deposited into **9190 on June 25, 2020

11. On June 26, 2020, LEEDS completed a $250,000.00 outbound wire transfer to RKD, who was the commercial real estate agent selling the Property. RKD was also part owner of the Property along with AB. Together, RKD and AB operated under the ESS LLC.

12. Records from Wheaton Bank showed a deposit in the amount of $250,000.00 from OM Capital Fund II on June 26, 2020, to a checking account ending **6374 in the name of RKD that was held at Glen Ellyn Bank & Trust.

13. After LEEDS completed the outbound wire to RKD on June 26, 2020, in the amount of $250,000.00, financial records obtained during this investigation do not show that LEEDS contributed any funds toward the EMD related to the purchase of the Property.

14. After the EMD was of $250,000.00 was paid to ESS by way of RKD, issues arose during the due diligence period that caused the acquisition of the Property to ultimately not occur.

15. Because the sale of the Property did not occur in a timely manner, LEEDS operating as OM, and ESS entered into an agreement known as a "Reinstatement and Amendment to Purchase and Sale Agreement," (RAPSA).

16. Terms of the RAPSA acknowledged the original PSA dated June 26, 2020, was terminated on July 24, 2020. The RAPSA was the new document that reinstated the PSA as modified by the RAPSA entered into between ESS and OM on July 29, 2020.

17. Terms of the RAPSA included an additional EMD in the amount of $550,000.00 that was due on "the effective date" which was July 29, 2020. Based on the original PSA, and the terms of the RAPSA, the total EMD

require for purchase of the Property was $800,000.00 A copy of the RAPSA was provided to the FBI.

18. Instead of providing SALZEIDER and authentic copy of the RAPSA, LEEDS provided SALZEIDER another altered document titled the "Amendment to Extend the Purchase and Sale Agreement," (the Amendment) that was also dated July 29, 2020. SALZEIDER's attorney confirmed to Affiant that LEEDS provided the altered Amendment to SALZEIDER via email, thus using the internet to transmit the document. A copy of the Amendment was provided to the FBI.

19. The RAPSA and the Amendment had different terms to include provisions that extended the PSA and the requirement of more earnest money. The Amendment stated the "purchaser and seller acknowledge and agree the PSA was extended on July 28, 2020, with a new closing date of Friday, August 14, 2020. Purchaser and Seller hereby agree to extend the PSA, as modified by the Amendment." Additionally, the Amendment stated that due to the extension of the PSA, the purchaser shall deposit as additional earnest money on the effective date, by wire transfer the amount of $1,300,000.00 into a bank account designated by the seller.

20. Based on the terms of SALZEIDER and LEEDS' agreement that costs to acquire the Property would be split 50/50, SALZEIDER wired LEEDS $650,000.00 from SALZEIDER's account with PNC BANK N.A. to LEEDS' savings account ending **2600 held with Lake Trust Credit Union on July 29, 2020. Wire detail information provided by SALZEIDER and a July 2020 statement for LEEDS savings account ending **2600 and checking account ending **9190 proved the wire transfer from SALZEIDER occurred and funds were received into LEEDS' savings account at Lake Trust Credit Union on July 29, 2020.

21. The July 2020 statement from Lake Trust Credit Union for LEEDS accounts ending **2600 and **9190 showed the following significant transactions:

    a. $650,000.00 inbound wire from SALZEIDER INC on 07/29/20 into **2600
    b. $100,000.00 withdrawal from **2600 to **9190 on 07/29/20
    c. $5,000.00 withdrawal from **2600 on 07/29/20
    d. $5,000.00 withdrawal from **2600 on 07/29/20
    e. $550,000.00 outbound wire to KD on 07/30/30

- KD is the same person as RKD who is previously referenced in this affidavit

    f. $30,000.00 descriptive withdrawal TO GWS II on 07/30/20

    g. $16,500.00 withdrawal on 07/31/20

    h. $1,000.00 withdrawal on 07/31/20

22. A July 2020 statement for a checking account ending **6374 for ESS held at Glen Ellyn Bank & Trust confirmed $550,000.00 was received into **6374 from OM on July 30, 2020.

23. In total, the checking account ending **6374 held by ESS that was opened by RKD received $800,000.00 total from a $250,000.00 wire on June 26, 2020, and a $550,000.00 wire on July 30, 2020. $800,000.00 made up the total EMD that was required based on terms of the authentic PSA and later the authentic RAPSA.

24. Ultimately, due to continued issues completing the sale of the Property, the sale of the Property never occurred.

25. An FBI forensic accountant completed forensic analysis of LEEDS' accounts ending **2600 and **9190 that were held at Lake Trust Credit

Union. Affiant has also reviewed accounts ending **2600 and **9190, wire detail information and documents provided by Glen Ellyn Bank & Trust related to the account ending **6374 belonging to ESS.

26. Forensic accounting and Affiant's review of financial records confirmed that LEEDS received $1,050,000.00 in total from SALZEIDER via a $400,000.00 wire transfer on June 26, 2020, and a second wire transfer from SALZEIDER on July 29, 2020, in the amount of $650,000.00.

27. The wires sent by SALZEIDER to LEEDS were exactly half ($1,050,000.00) of the total purchase price of the Property ($2,100,000.00). Based on SALZEIDER and LEEDS' agreement to share the cost 50/50 to acquire the Property, SALZEIDER wired in total, $1,050,000.00 to LEEDS with the understanding LEEDS was also contributing 50 percent of the total purchase price of the Property to ESS. Forensic accounting and Affiant's review showed SALZEIDER paid exactly half of the total purchase price of the Property to LEEDS, who in turn paid ESS via RKD the total earnest money due which was $800,000.00, while LEEDS contributed no funds to the purchase of the property and retained the remaining $250,000.00 SALZEIDER had wired him (LEEDS).

28. LEEDS used the remaining $250,000.00 SALZEIDER wired him that was intended for the purchase of the Property on personal purchases/matters. The following items/transactions were found during forensic analysis and/or review of LEEDS' accounts held with Lake Trust Credit Union. The following transactions were in excess of $500.00, therefore not every transaction LEEDS made using the stolen funds from SALZEIDER is included:

   a. A check in the amount of $90,687.99 to Serra Ford of Rochester Hills on 06/25/2020 and noted, "OM Capital Fund II LLC in the memo line
   b. Cash withdrawal totaling $3,000.00 on 06/25/2020
   c. Cash withdrawal totaling $30,000.00 on 06/26/2020
   d. A check in the amount of $20,000.00 to a person known as GSIII on 06/25/2020 and noted, "OM Capital Fund II LLC" in the memo line
   e. A payment in the amount of $782.02 was made to the Portage Point Inn in Onekama, Michigan on 06/29/20
   f. From 06/30/20 to 07/03/20, three peer to peer transfers were made using CashApp totaling $4,400.00 to "Andrea Lee," who Affiant believes is LEEDS' wife, Andrea Leeds.
   g. On 07/30/20, a $30,000.00 transfer was completed to GSIII
   h. A check in the amount of $16,500.00 was made payable to 460 Parkview LLC on 07/31/20 and denoted "Anthony Leeds" in the memo line
   i. A payment in the amount of $2,455.84 was made to Chet's Cleaning Inc. on 07/31/20
   j. A check in the amount of $12,589.53 to Onekama Marine, Inc. dated 08/07/20 and noted "Anthony Leeds" in the memo line

    k. Cash withdrawal totaling $5,000.00 on 07/29/20

    l. Cash withdrawal totaling $1,500.00 on 07/30/20

    m. Cash withdrawal totaling $1,000.00 on 07/31/20

    n. Cash withdrawal totaling $5,203.00 on 08/06/20

    o. A payment to Restoration Hardware in the amount of $1,030.88 was made on 08/05/20

    p. From 07/30/20 to 08/20/20, eight peer to peer transfers were made with CashApp totaling $8,050.00 to "Andrea Lee," who affiant believes is LEEDS' wife, Andrea Leeds.

    q. A payment in the amount of $1,078.95 was made to the Portage Point Inn in Onekama, Michigan on 08/10/20

    r. A payment in the amount of $604.69 was made to Grand Traverse Rubber Company on 08/13/20

    s. A payment in the amount of $1,078.95 was made to the Portage Point Inn in Onekama, Michigan on 08/17/20

    t. A payment in the amount of $1,256.08 was made to Action Water Sports on 08/20/20

29. As detailed above, LEEDS used funds provided to him by SALZIEDER that were intended as SALZIEDER's 50 percent contribution to the purchase of the Property for seemingly personal payments and purchases that had nothing to do with the purchase of the Property.

30. When SALZIEDER reported this matter to the FBI, he and his attorney provided supporting documents that included various email correspondence between involved parties as well as civil court filings related to a lawsuit

SALIZEIDER filed against LEEDS in Oakland County Circuit Court related to this fraud.

31. An email from an attorney who represented RKD/ESS to SALZEIDER's attorney dated November 12, 2020, showed the PSA SALZIEDER's attorney had sent the attorney representing RKD/ESS was "fake" and counsel representing RKD/ESS did not have a copy of that PSA other than what was provided by SALZEIDER's counsel. Additionally, counsel for RKD/ESS advised the Amendment provided to them by SALZEIDER's counsel was "fake" and counsel for RKD/ESS did not have the Amendment prior to it being provided by SALZEIDER's counsel.

32. In April of 2020, Affiant and another FBI Agent interviewed RKD in the presence of his attorney under a Kastigar agreement authorized and issued by the United States Attorney's Office for the Eastern District of Michigan. During the interview, RKD confirmed he knew LEEDS as they both worked together briefly. RKD knew LEEDS as a "developer" but confirmed he had never engaged in a business deal with LEEDS that actually "consummated." RKD confirmed LEEDS reached out to him in about March of 2020 looking for industrial land to possibly purchase and indicated he (LEEDS) had capital partners and equity.

33. RKD met SALIZEIDER one time when SALZIEDER and LEEDS came to Illinois to see the Property and other properties for sale in the area. RKD said SALZIEDER seemed involved in the efforts to purchase the Property, but LEEDS seemed to be "the leader." RKD had no knowledge of an MOU or any joint venture/partnership agreement LEEDS/OM Capital Fund II LLC and SALZEIDER/SALZEIDER INC. may have had.

34. RKD believed terms of the purchase of the Property called for an EMD of $250,000.00 followed by an additional EMD of $550,000.00, that together totaled $800,000.00 RKD was showed the PSA that called for the aforementioned terms and recognized it was authentic.

35. RKD was shown a copy of the PSA that LEEDS had presented to SALZEIDER that called for an EMD of $800,000.00. RKS was then shown a copy of the Amendment that required an additional EMD of $1,300,000.00. RKD confirmed he had never seen those documents with those EMD amounts before and did not have anything to do with the language for either document. RKD stated the amounts of the EMDs did not make sense because EMDs that high made the total EMD close to the actual purchase price of the Property.

36. RKD explained he had been part of many sales of property in his professional career and this one had many issues. RKD explained there were delays with LEEDS wiring the EMDs in a timely manner even though RKD eventually received the $800,000.00 EMD for the Property from LEEDS.

37. RKD did not know why LEEDS and SALZEIDER never actually purchased the Property but believed SALZEIDER's estimate for construction of the Property was high and LEEDS wanted to purchase the Property and complete a "build to suit."

38. RKD was asked if he knew LEEDS defrauded SALZEIDER during LEEDS and SALZEIDER's efforts to purchase the Property by altering documents that raised the EMD needed to purchase the Property. RKD replied, "no." RKD confirmed since this sale had fallen through, three of the four parcels of land ESS owned had been sold to another company.

39. Included in emails provided by SALZEIDER and his attorney to the FBI, was correspondence between SALZEIDER and LEEDS dated approximately June 24 & 25, 2020, that showed written communication between LEEDS and SALZEIDER that discussed proposed terms, conditions and protections related to a joint venture to purchase the Property.

40. Also included were emails from SALZEIDER to LEEDS dated August 20, 21, & 24, 2020, and September 1, 2020, that showed SALZEIDER had been unable to reach LEEDS and LEEDS had not contacted him (SALZEIDER) or responded to his demands to return his (SALZEIDER's) $1,050,000.00 capital investment. The September 1 email informed LEEDS that LEEDS had until September 4, 2020, by 5:00 PM to return SALIZEIDER's funds or SALZEIDER would authorize his attorney to pursue legal actions against him (LEEDS).

41. On November 18, 2020, Oakland County Circuit Court Judge Martha D. Anderson ordered and granted a default judgment in favor of the plaintiff, Salzeider Inc., and against the defendant(s) Anthony Leeds/OM Capital Fund II, LLC in the amount of $1,803,938.07, related to a civil lawsuit filed by SALZEIDER against LEEDS regarding this fraud. The aforementioned matter is Oakland County Circuit Course Case No: 2020-183877-CB.

42. A proof of service document provided to the FBI by SALZEIDER related to a subpoena for creditor exam indicated service was made to LEEDS' mother-in-law at **** Loch Lomond, Oxford, Michigan, on 01/14/2021 at 2:39 PM. According to information from SALZIEDER and his attorney,

LEEDS did not participate in depositions related to the above-mentioned civil case in Oakland County Circuit Court.

43. During this investigation, automated clearing house (ACH) wire transfers between SALZEIDER, LEEDS, and RKD occurred. SALZEIDER's wire transfers originated from his PNC Bank N.A. account, which is a financial institution headquartered in Pittsburgh, Pennsylvania. LEEDS received wire transfers from SALZEIDER's PNC Bank N.A. account, to his Lake Trust Credit Union account with is a financial institution headquartered in Brighton, Michigan. Finally, LEEDS sent wire transfers from his Lake Trust Credit Union account to RKD's account held with Glen Ellyn Bant & Trust, which is located in Glen Ellyn, Illinois. Automated ACH wire transfers passed Pennsylvania, Michigan, and Illinois state lines on July 25 and 26, 2020, and again on July 29 and 30, 2020, as detailed in the above paragraphs, thus crossing interstate jurisdiction.

## CONCLUSION

44. Based on the aforementioned information, there is probable cause to believe Anthony Roland Lister Leeds, has committed acts in violation of 18 U.S.C. § 1344 (Wire Fraud), thus Affiant respectfully requests the court issue an arrest warrant for LEEDS pursuant to this criminal complaint.

Respectfully submitted,

_____
David S. Jacobs, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
HONORABLE ANTHONY P. PATTI    November 16, 2022
UNITED STATES MAGISTRATE JUDGE

18